NORRIS, Judge.
Defendant pled guilty as charged to the crimes of attempted aggravated rape and aggravated burglary. Thereafter, at the conclusion of a sentencing hearing provoked at the request of the defendant, defendant was sentenced to serve fifteen years at hard labor on the former charge and ten years at hard labor on the latter charge, both sentences to be served consecutively. It is from the imposition of the consecutive sentences that defendant appeals.
Our review of the record consisting of the transcripts of the preliminary hearing, the Boykin colloquy and the evidence filed in connection with the plea of guilty, and the sentencing hearing reveals the following uncontroverted and uncontradieted facts.
Defendant a 26 year old first felony offender with no significant prior criminal history,[1] had been drinking on April 1,1982. Between 10:30 and 11:20 p.m., he arrived at the home of a female friend where he remained until approximately 1:30 a.m. when he left feeling depressed and unloved. Thereafter, around 2:30 a.m., he went to the residence of the victim, gaining entrance through a window, with the intention of committing an act of rape. The victim was awakened in her bed when the defendant began choking her causing her to experience difficulty breathing. Upon awakening, the victim was told by the defendant that if she “hurt him” she was a “dead bitch.” The defendant then began to fondle her in the vaginal area and told her to move over in the bed. At this point with her free hand, the victim obtained a pistol from her nightstand intending to fire it at the defendant. When she positioned the gun for firing, the defendant saw the gun and struck her hand. The gun discharged sending a bullet into the bedroom ceiling. A struggle for the gun ensued during which the defendant administered a severe beating to the victim when he could not dislodge the gun from her hand. During the struggle, the gun flew across the room. The defendant then turned on a light in the room, retrieved the gun, pointed the gun at the victim, told the victim again that she was a “dead bitch” and fled.
Several hours later, the defendant voluntarily surrendered to the police, surrendered the gun, and confessed to the crimes. At the preliminary hearing, the officer who testified stated that the defendant appeared depressed and remorseful during questioning.
On the date scheduled for trial, defendant withdrew his former pleas of not guilty to both charges and pled guilty. Upon accepting the pleas of guilty, the trial court set a date for a sentencing hearing which had been requested by the defendant. No pre-sentence investigation was requested by the defendant or ordered by the court. Defendant was allowed to remain on bond.
*1326 On the same date after the plea was entered, the defendant went into a convenience store across the street from the 7-11 store where the victim was employed, came out of the store, and sat on his motorcycle in full view of the 7-11 and its occupants. The victim was working when this occurred, was frightened and upset by these actions and left the store. She reported this incident to the assistant district attorney in charge of this case.
Approximately ten days later, the sentencing hearing was held. It is noteworthy that the defendant did not testify at this hearing nor did he in any other manner seek to inform the court of any reasons for his behavior, either at the time of the commission of the crimes for which he was charged or at the time of the incident at the 7-11.
At the hearing, the court listened to all of the evidence presented by the defendant. No evidence offered on behalf of the defendant was excluded or objected to, nor did the trial court refuse to hear any evidence which the defendant offered. The only evidence presented on behalf of the defendant at this hearing was the testimony of three friends of the defendant and the defendant’s father. In summary, the testimony of the friends was they had known the defendant well for periods of time ranging from 4 to 6 years and that he was a good person. Two of these witnesses testified that the defendant had baby sat with their children, that they still trusted him, and that they were surprised when they learned of the pending charges. One witness testified that defendant had been drinking when he arrived at her home several hours before the crimes were committed but that he had drunk nothing while there. Apparently, he was upset over a proposed truck sale and had left her residence aggravated and upset feeling unloved and uncared for.
Defendant’s father was also called to testify. He stated that the defendant lived with him and that he would be willing to allow the defendant to continue to live with him if placed on probation. He further testified that he would be willing to incur any financial cost that might be involved in connection with psychiatric or psychological treatment for the defendant. He then testified that the defendant had indicated before the incident that he wanted to get to know the victim better.[2] Indicating that he considered defendant to be an habitual alcoholic and to be a victim of society, he admitted that he was not aware of the extent of the defendant’s drinking problem until after the incident. The family had never sought any treatment for the defendant prior to the commission of the instant offenses.
The only witness called on behalf of the state was the victim who testified as to the events comprising the crimes and the later incident at the 7-11 store. She described for the court the extent of the injuries which were inflicted upon her by the defendant. These injuries were further shown by pictures of the victim offered into evidence at the time of the guilty pleas which indicate that she received a severe beating at the hands of the defendant.
After hearing and considering all of the evidence presented at the sentencing hearing, viewing the pictures of the victim, considering the confession, and conferring with defense counsel in chambers, the trial judge imposed the consecutive sentences. In imposing these sentences, the trial judge stated his reasons and considerations which are summarized as follows:
(1) He found one mitigating circumstance — the defendant had voluntarily turned himself in.
(2) He found that the defendant had planned the crime, had broken into the victim’s home, had attempted to rape her and when she sought to defend herself had taken her weapon and committed a battery upon her.
*1327 (3) He felt that there would be an undue risk if a suspended sentence was given that the defendant would commit another crime and might make the same victim the object of another crime because of the later incident at the 7 — 11.
(4) He felt that the defendant was in need of correctional treatment which could be provided most effectively by his committment to an institution.
(5) He felt that a lesser sentence would deprecate the seriousness of defendant’s crime, not only as to the defendant, but as to the crime of rape in particular, there being a “strong move about in the United States to try to do something about the crime of rape.”
(6) He felt that a suspended sentence and probation would not benefit the defendant or society.
Defendant’s only contention on appeal is that the consecutive sentences totaling 25 years imprisonment at hard labor constitute an excessive sentence under Louisiana Constitution Article 1, § 20 (1974). See State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Cox, 369 So.2d 118 (La.1979).
While the Supreme Court has recognized that concurrent rather than consecutive sentences are the general rule for convictions arising out of a single course of criminal conduct and in the absence of a showing that the public safety requires a longer sentence [See State v. Ortego, 382 So.2d 921 (La.1980); State v. Cox, supra.], it has never been held that if convictions arise out of a single course of conduct that consecutive sentences will necessarily be found to be excessive. State v. Molinario, 400 So.2d 596 (La.1981).
A sentence is excessive if it is grossly out of proportion to the severity of the crime or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). Furthermore, the trial court is given wide discretion in the imposition of sentences within statutory limits and the sentences will not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Jacobs, 383 So.2d 342 (La.1980); State v. Spencer, 374 So.2d 1195 (La.1979); State v. Sepulvado, supra.
The statutory guidelines provided by Article 894.1 of the Louisiana Code of Criminal Procedure furnish criteria by which this court can measure whether a sentence within the statutory limits is nevertheless excessive either by reason of its length or its nature. State v. Ortego, supra; State v. Cox, supra. However, the trial judge’s failure to comply with the provisions of Article 894.1 does not render the sentence imposed invalid. State v. Wimberly, 414 So.2d 666 (La.1982).
In Wimberly, the court stated:
* * * This court adopted the sentencing criteria of Article 894.1(A) and (B) as appropriate criteria by which to measure whether a sentence within statutory limits is nevertheless constitutionally excessive. State v. Sepulvado, supra. We have not as yet acted under our supervisory, administrative or rule making powers to require that sentencing judges state basic facts and reasons in every case. In those cases in which we have vacated the sentence and remanded the case for resentencing in full, recorded compliance with Article 894.1, our action was not prompted simply by the sentencing judge’s failure to give his reasons for the penalty imposed. Rather, it was because, based on the inadequate record presented to us, there appeared to be a substantial possibility that the defendant's complaints of an excessive sentence had merit. In each case, pursuant to our duty to uphold the constitution, which expressly prohibits the imposition by law of excessive punishment, we vacated the sentence and remanded the case for re-sentencing on an adequate record, including strict compliance with Article 894.1. [Emphasis added.] 414 So.2d at 672.
While the reasons and considerations stated by the trial judge in the instant case are arguably inadequate under La.C.Cr.P. Art. 894.1, the reasons in the instant case do indicate that the sentence was not imposed arbitrarily and that the trial court con *1328 sidered all of the mitigating circumstances presented on behalf of the defendant. See State v. McDermitt, 406 So.2d 195 (La.1981); State v. Bourgeois, 406 So.2d 550 (La.1981). Furthermore, the sentence is not on its face apparently severe, it is in the lower range of the sentencing scale, and the factual basis for the actual offense committed appears in the record. Therefore, there is no necessity for a remand in this case for compliance with Article 894.1. See State v. Jones, 412 So.2d 1051 (La.1982); State v. Bowick, 403 So.2d 673 (La.1981); State v. Day, 391 So.2d 1147 (La.1980); State v. McDermitt, supra; State v. Daranda, 388 So.2d 759 (La.1980); State v. Davenport, 399 So.2d 201 (La.1981); State v. Cox, supra.
Accordingly, we consider the issue of whether or not the trial judge abused his sentencing discretion based on the record and on the reasons that were given in pronouncing sentence.
We are aware of the general rule that the imposition of consecutive rather than concurrent sentences for crimes arising from a single course of conduct requires particular justification. State v. Messer, 408 So.2d 1354 (La.1982). In this case, we conclude that the record plainly supports and provides the particular justification required to support the 25 year sentence even though this was composed of consecutive sentences. Defendant’s maximum exposure for the two charges was 80 years [50 years for attempted aggravated rape and 30 years for aggravated burglary]. He received less than Vs of that maximum. Clearly, the trial judge did not abuse his great discretion based on the record in the posture in which it was presented to him.
Our conclusion is further bolstered by the holding of the Supreme Court in State v. Day, supra. In Day, the defendant, a youthful first offender was convicted of aggravated burglary and attempted simple rape as a result of his having entered the home of an elderly female in the early morning hours. When the victim awoke, she saw a figure standing in her bedroom doorway. The defendant struck her on the head and continued to beat her until she lapsed into intermittent periods of unconsciousness. He demanded to know where her money and valuables were and told her that he would kill her if she did not reveal their location. At one point she regained consciousness and found that her pajama bottoms had been removed. She was also told by the defendant that he was going to impregnate her. As a result of the beating which she received at the hands of the defendant, she was blinded. The trial judge imposed consecutive sentehces of 30 years imprisonment at hard labor and 12V2 years imprisonment at hard labor, the maximum sentences which he could have received. Defendant appealed, assigning as one of his errors that the sentences constituted an excessive sentence. The Supreme Court noted that the trial judge did not adequately comply with Article 894.1 but refused to remand the case in light of its finding that the record plainly supported the sentence imposed and that in the interest of judicial economy it was unnecessary to remand to require the trial court to restate for the record matters which are already apparent from the record. The court went on to distinguish State v. Cox, supra, stating:
This case is nothing like State v. Cox, above, in which a barroom brawl resulted in the armed robbery and attempted murder of the victim. In Cox, the victim, although severely injured, was a male; there was no gross discrepancy in the age of the victim and the assailant; there was no nighttime invasion of a home; there was no prolonged, pitiless beating as was inflicted here; and there was an indication of the possibility of provocation by the victim.
The reasoning of the Day court is equally applicable to the instant case and plainly supports the sentences imposed herein.
Despite defendant’s youth and lack of significant criminal history, these unprovoked, planned, senseless, and brutal crimes against a young woman asleep in the sanctuary of her own home during the night merits a penalty at least as severe as the *1329 one imposed in this ease. The facts of this case show that the defendant’s conduct caused serious harm to the victim. By his own admission, the defendant intended to cause serious harm to this victim — he entered her home fully intending to rape her, to commit an act of invasion brutal in and of itself even without an accompanying beating. While there may be contained within this record some evidence of drinking, there is no real evidence of provocation or substantial grounds tending to excuse this brutal criminal conduct. The victim did not induce the criminal conduct, facilitate in its commission or deserve the treatment which she received at the hand of the defendant. The trial judge’s finding that the defendant might commit another crime, perhaps even against this victim, that he was in need of correctional treatment, and that a lesser sentence would deprecate the seriousness of the crime are amply supported by this record.
Certainly, defendant’s actions reflect a depraved indifference to the suffering of a fellow human being. Obviously, his only concern was for the satisfaction of his lustful, violent appetites. Attempted aggravated rape and aggravated burglary are serious crimes which threaten the safety of the public. As such, they call for severe penalties, which are provided by law. It is not improper for the trial judge to take into account the larger sociological concerns in imposing sentence as long as the sentence is particularized to the defendant. State v. Ray, 423 So.2d 1116 (La.1982).
As evidenced here, the behavior of this defendant calls for severe condemnation. His age and lack of prior convictions do not compensate for, make more understandable or in any way mitigate in favor of a lesser sentence.
Accordingly, the conviction and sentence of the defendant are affirmed.
AFFIRMED.

. Because there is no pre-sentence investigation report and no “rap sheet” filed into evidence, we can only assume that defendant is a first felony offender in light of the testimony. The testimony reflects that defendant was arrested for simple kidnapping and contributing to the delinquency of a juvenile. These charges were later dropped by the District Attorney.

. Defendant was acquainted with the victim as a result of his having been a customer at the 7-11 where she was employed.