BARRY, Judge.
The defendant was convicted of theft, La.R.S. 14:67, and sentenced to three years at hard labor. The sentence was suspended and he was placed on five years active probation with specified conditions.
The defendant’s appeal presents three assignments of error which relate to the same issue, i.e., sufficiency of the evidence to convict.
FACTS
In 1986 Vinson Guard Service operated a courier business which delivered cash for payrolls from banks or steamship companies and other documents to vessels.
*1105 When Vinson received a payroll order its courier proceeded to the designated bank to pick up funds for delivery to the ship. The courier neither handled nor counted the money. The teller counted the money, placed it into a sealed canvas bag, and gave the courier the bag and a receipt for the ship's captain.
When the courier arrived at the ship he watched the Captain break the seal and count the money. Any shortage would be noted and the courier would return to the bank for reimbursement.
If Vinson was to hold the money for later delivery, the courier returned to his office. He then followed company procedure by concealing the canvas bag in a brown paper bag which was closed with rubber bands and labeled with the ship’s name for later delivery.
The brown bag was placed inside a locked file cabinet in the general manager’s office. Only general manager Paul Wright, vice president J.D. Vinson, his brother James Vinson, operations manager John McGee, personnel director Peter Cochran, and the couriers, Paul Bizot, Andrew Zollinger, and the defendant had keys to the office. The Vinsons, Wright, Bizot, Zollinger and the defendant had keys to the cabinet.
At the time of the theft the defendant had worked at Vinson for five months. During his employment he borrowed small sums of money from McGee and other employees. He had fallen eight months behind in his rent and owed over $1,600 to his roommate John Dougherty. A few days prior to the theft the defendant told Dougherty that he was going to borrow money to consolidate his debts and pay the back rent.
Several days before the theft the defendant test drove a 1985 Chevrolet Monte Carlo and told McGee that he intended to buy the car.
Before 2 p.m. on Friday, March 7, 1986, McGee drove Bizot to the First National Bank of Commerce for a pick-up. Bizot signed a voucher for $45,000 and accepted a sealed bag and a receipt in exchange. Bizot returned to Vinson’s, wrapped the bag and receipt in a brown paper bag, closed it with rubber bands, and labeled it “Central Gulf Ship”. He placed the package in the drawer and locked the cabinet.
About 3:30 p.m. the defendant placed a similar package containing the $69,000 Doctor Lykes payroll into the same drawer. The defendant and Bizot agreed that Bizot would deliver the Lykes payroll the following morning. After' signing out at 4:00 p.m. the defendant returned alone to Wright’s office.
On Friday evening the defendant went to Bryan Chevrolet and bought the Monte Carlo for $11,514.50 and paid with 115 one hundred dollar bills.
The defendant returned to his apartment and moved out, leaving 16 one hundred dollar bills on his roommate’s dresser for the unpaid rent. Dougherty retained two of the bills which were crisp and consecutively numbered.
On Saturday morning Bizot went to work to deliver the Lykes payroll. When he opened the file cabinet he noticed that the bag labeled “Central Gulf” was there, but he did not look inside. That afternoon the defendant went to the office to deliver papers to a ship in Belle Chasse.
On Monday morning Bizot discovered that the Central Gulf bag containing $45,-000 was missing from the cabinet. There was no sign of forced entry. Police questioned all the employees. The next day the defendant failed to report to work. He never did call in or return Vinson’s equipment, or pick up his $334.26 paycheck. Although the defendant knew that he was wanted for theft, he avoided arrest for ten months.
SUFFICIENCY OF THE EVIDENCE
When reviewing the evidence for sufficiency, the due process clause of the Fourteenth Amendment requires that the appellate court view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact would have found the essential elements of the crime beyond a reasonable doubt. State v. Bunch, 510 So.2d 1266 (La.App. *1106 4th Cir.1987), Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Moreover, when circumstantial evidence is involved, the State must prove that no reasonable hypothesis of innocence exists. La.R.S. 15:438, State v. Jacobs, 504 So.2d 817 (La.1987).
The record shows that the missing money was placed in the cabinet on Friday afternoon shortly before the defendant opened the cabinet. Later that afternoon the defendant returned (alone) to the office. He claims that Wright ordered him to the office to advise that the $45,000 would not be delivered until Monday. Wright denies such a meeting or conversation. That night the defendant spent 131 one hundred dollar bills (for the car and rent) and at least two bills were consecutively numbered.
The defendant told his roommate that he borrowed the money and told his sister that he had saved the money since childhood. He testified that he saved the one hundred dollar bills from payroll checks and from his previous job at Showbiz Pizza. However, he admitted that none of those customers had given him consecutively numbered bills. Further, he claimed that he had all of the cash even when he was behind in his rent.
The defendant admitted he knew that Bizot would make the Lykes delivery Saturday morning. When Bizot opened the cabinet he only saw the disguise bag and had no reason to verify its contents. When Detective Leslie questioned the defendant on Monday he denied any knowledge of the delivery schedule.
The defendant disappeared after the police questioned the defendant and he never returned to claim his paycheck. The defendant explained that a Vinson employee had threatened him with prosecution for the theft.
Although the defendant's sister informed him that he was wanted and advised him to surrender, the defendant eluded arrest for ten months. His said that he did not want “to get my ass shot off” by the police. He later surrendered.
We find the circumstantial evidence sufficient to preclude any reasonable hypothesis of innocence. The defendant’s explanations of the hundred dollar bill spending spree are implausible, particularly in light of his earlier impoverished circumstances, the time when the cash was spent, and his access to the file cabinet.
The assignment lacks merit.
We have reviewed the record for errors patent and there are none.
The conviction and sentence are affirmed.
AFFIRMED.